1    MICHAEL A. MORIN (*pro hac vice* pending)
     michael.morin@lw.com
2    MATTHEW J. MOORE (*pro hac vice* pending)
     matthew.moore@lw.com
3    GABRIEL K. BELL (*pro hac vice* pending)
     gabriel.bell@lw.com
4    LATHAM & WATKINS LLP
     555 Eleventh Street, NW, Suite 1000
5    Washington, DC 20004
     T: (202) 637-2200; F: (202) 637-2201
6
7    RICHARD G. FRENKEL (SBN 204133)
     rick.frenkel@lw.com
8    LATHAM & WATKINS LLP
     140 Scott Drive
9    Menlo Park, California 94025
     T: (650) 328-4600; F: (650) 463-2600
10
11   Attorneys for Defendants
12
13              **UNITED STATES DISTRICT COURT**
14             **NORTHERN DISTRICT OF CALIFORNIA**
15                  **SAN FRANCISCO DIVISION**
16

| | |
|---|---|
| 17  CONVIVA, INC., | Case No. 3:16-cv-01543-VC |
| 18                 Plaintiff, | **DEFENDANTS NICEPEOPLEATWORK,** |
| 19         vs. | **S.L.'S AND NPAW, INC.'S NOTICE OF** |
| | **MOTION AND MOTION TO DISMISS** |
| 20  NICEPEOPLEATWORK, S.L., NPAW, Inc., | **PURSUANT TO FED. R. CIV. P. 12(b)(6)** |
| 21  FERRAN GUTIERREZ and SERGI VERGES | Date:          September 8, 2016 |
| | Time:          10:00 AM |
| 22                 Defendants. | Courtroom:   4, 17th Floor |
| | Judge:          Hon. Vince Chhabria |
| 23 | |
| 24 | |

25
26
27
28

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFENDANTS NICEPEOPLEATWORK, S.L.'S AND
NPAW, INC.'S MOTION TO DISMISS
CASE NO. 3:16-CV-01543-VC

1

# TABLE OF CONTENTS

2

**Page**

3   NOTICE OF MOTION AND MOTION ................................................................................. i

4   STATEMENT OF RELIEF REQUESTED ......................................................................... i

5   MEMORANDUM OF POINTS AND AUTHORITIES ........................................................1

6   I.      FACTUAL BACKGROUND ...................................................................................1

7           A.      Parties And Procedural History .................................................................1

8           B.      The '725 And '288 Patents .........................................................................2

9           C.      The '965 Patent ...........................................................................................3

10  II.     LEGAL STANDARD ..............................................................................................4

11  III.    ARGUMENT ...........................................................................................................4

12          A.      The Asserted Patent Claims Are Invalid Under 35 U.S.C. § 101 ..............4

13                  1.      The '725 And '288 Patents Are Not Patent-Eligible ..................6

14                  2.      The '965 Patent Lacks Patent-Eligible Subject Matter.............11

15          B.      Plaintiff's Claim For Intentional Interference With Contractual
                    Relations And Unfair Competition Are Superseded By CUTSA.........14

16
            C.      Plaintiff Fails To State A Claim For Trade Secret Misappropriation...................15
17
    IV.     CONCLUSION......................................................................................................15
18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFENDANTS NICEPEOPLEATWORK, S.L.'S AND
NPAW, INC.'S MOTION TO DISMISS
CASE NO. 3:16-CV-01543-VC

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

## CASES

4

*AirDefense, Inc. v. AirTight Networks, Inc.,*
   No. C 05-04615JF, 2006 WL 2092053 (N.D. Cal. July 26, 2006) ........................................ 14

5

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
6    134 S. Ct. 2347 (2014) ........................................................................................................ passim

7

*Asghari-Kamrani v. United Servs. Auto. Ass'n,*
   No. 2:15cv478 (E.D. Va. July 5, 2016) ................................................................................... 8
8

9

*Axis Imex, Inc. v. Sunset Bay Rattan, Inc.,*
   No. C 08-3931 RS, 2009 WL 55178 (N.D. Cal. Jan. 7, 2009) ............................................. 15

10

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC,*
11    --- F.3d ----, No. 2015-1763, 2016 WL 3514158 (Fed. Cir. June 27, 2016) ............... 9, 10, 13

12

*Bilski v. Kappos,*
   561 U.S. 593 (2010) ........................................................................................................... 5, 7
13

14

*buySAFE, Inc. v. Google, Inc.,*
   765 F.3d 1350 (Fed. Cir. 2014) ............................................................................................... 9

15

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.,*
16    776 F.3d 1343 (Fed. Cir. 2014) ........................................................................................ passim

17

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.,*
   558 F. App'x 988 (Fed. Cir. 2014) .......................................................................................... 8
18

19

*CyberSource Corp. v. Retail Decisions, Inc.,*
   654 F.3d 1366 (Fed. Cir. 2011) ........................................................................................ passim

20

*DDR Holdings, LLC v. Hotels.com, L.P.,*
21    773 F.3d 1245 (Fed. Cir. 2014) ............................................................................................. 10

22

*Dealertrack, Inc. v. Huber,*
   674 F.3d 1315 (Fed. Cir. 2012) ........................................................................... 5, 9, 10, 13
23

24

*Enfish, LLC v. Microsoft Corp.,*
   822 F.3d 1327 (Fed. Cir. 2016) ......................................................................................... 8, 12

25

*Farmers Ins. Exch. v. Steele Ins. Agency, Inc.,*
26    No. 2:13-CV-00784, 2013 WL 3872950 (E.D. Cal. July 25, 2013) ...................................... 14

27

*Gabriel Techs. Corp. v. Qualcomm Inc.,*
   No. 08-cv-1992, 2009 WL 3326631 (S.D. Cal. Sept. 3, 2009) .............................................. 14
28

ii

*Gottschalk v. Benson*,
    409 U.S. 63 (1972)..............................................................................................................4

*GT Nexus, Inc. v. Inttra, Inc.*,
    No. C 11-02145-SBA, 2015 WL 6747142 (N.D. Cal. Nov. 5, 2015) ...................................8

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016)..................................................................................... passim

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015).................................................................................... passim

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015).................................................................................... passim

*Jobscience, Inc. v. CVPartners, Inc.*,
    No. C 13-04519 WHA, 2014 WL 852477 (N.D. Cal. Feb. 28, 2014)..................................15

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
    90 Cal. Rptr. 3d 247 (2009) .............................................................................................14

*Kinglite Holdings Inc. v. Micro-Star Int'l Co. Ltd.*,
    No. 14-cv-3009 (C.D. Cal. July 6, 2016)............................................................................8

*Mattel, Inc. v. MGM Entm't, Inc.*,
    782 F. Supp. 2d 911 (C.D. Cal. 2011) ...............................................................................14

*MedioStream, Inc. v. Microsoft Corp.*,
    869 F. Supp. 2d 1095 (N.D. Cal. 2012) .............................................................................15

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015).............................................................................4, 10, 12

*OpenTV, Inc. v. Apple Inc.*,
    No. 5:15-CV-02008-EJD, 2016 WL 344845 (N.D. Cal. Jan. 28, 2016)..............................6, 8

*Papst Licensing GmbH & Co. KG v. Xilinx Inc.*,
    No. 16-CV-00925-LHK, 2016 WL 3196657 (N.D. Cal. June 9, 2016) .......................... passim

*S. Cal. Inst. of Law v. TCS Educ. Sys.*,
    No. CV 10-8026 PSG (AJWx), 2011 WL 1296602 (C.D. Cal. Apr. 5, 2011) ......................15

*Synopsys, Inc. v. ATopTech, Inc.*,
    No. C 13-02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013).....................................15

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014)..................................................................................... passim

*Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*,
    635 F. App'x 914 (Fed. Cir. 2015) .....................................................................................10

iii

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFENDANTS NICEPEOPLEATWORK, S.L.'S AND
NPAW, INC.'S MOTION TO DISMISS
CASE NO. 3:16-CV-01543-VC

1

## STATUTES

2   35 U.S.C. § 101 ................................................................................................ 1, 4, 6, 7

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iv

1                            **NOTICE OF MOTION AND MOTION**

2        PLEASE TAKE NOTICE that on September 8, 2016 at 10:00 AM or as soon thereafter

3 as the matter may be heard, in the courtroom of the Honorable Vince Chhabria at the United

4 States District Court for the Northern District of California, San Francisco Division, located at

5 the San Francisco Courthouse, Courtroom 4 – 17th Floor, 450 Golden Gate Avenue, San

6 Francisco, CA 94102, Defendants NicePeopleAtWork, S.L. and NPAW, Inc. will and hereby do

7 move the Court to dismiss Plaintiff Conviva, Inc.'s Amended Complaint for failure to state a

8 claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

9                          **STATEMENT OF RELIEF REQUESTED**

10       Defendants NicePeopleAtWork, S.L. and NPAW, Inc. respectfully request an order

11 dismissing the claims against them in this action.  For the reasons set forth in the Memorandum

12 of Points and Authorities below, the papers on file in this action, and any other evidence or

13 argument the Court may properly receive in connection with this motion, the asserted patents are

14 invalid as a matter of law under 35 U.S.C. § 101, the trade secret misappropriation claim is

15 inadequately pled, and the remaining state law claims are superseded under California law.

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFENDANTS NICEPEOPLEATWORK, S.L.'S AND
NPAW, INC.'S MOTION TO DISMISS
CASE NO. 3:16-CV-01543-VC

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

Plaintiff's Amended Complaint is not about any genuinely alleged violation of the law.

3    Rather, it serves a singular purpose: to improperly bully NicePeopleAtWork, S.L. and NPAW,

4    Inc. (collectively, "NPAW"), a smaller yet increasingly successful competitor.  While Plaintiff

5    alleges claims for patent infringement, intentional interference with contractual relations, unfair

6    competition, and trade secret misappropriation, none are viable.

7

To begin with, the asserted patents are invalid under 35 U.S.C. § 101 for lack of patent-

8    eligible subject matter because they are, at their core, directed to abstract ideas that humans have

9    long performed (*i.e.*, making status reports and making predictions based on historical data)

10   implemented with generic computer components in a particular technological environment (*i.e.*,

11   with respect to online media content players).  Those are same sort of patents that the Supreme

12   Court, Federal Circuit, and this Court have repeatedly found invalid in recent years.  *See Alice*

13   *Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014); *In re TLI Commc'ns LLC Patent*

14   *Litig.*, 823 F.3d 607 (Fed. Cir. 2016); *Papst Licensing GmbH & Co. KG v. Xilinx Inc*., No. 16-

15   CV-00925-LHK, 2016 WL 3196657, at *6 (N.D. Cal. June 9, 2016).  Plaintiff's state law claims

16   fare no better, for the intentional interference and unfair competition claims are superseded, and

17   no trade secret has been misappropriated.  Plaintiff's Amended Complaint should be dismissed.

18   **I.      FACTUAL BACKGROUND**

19           **A.      Parties And Procedural History**

20

NPAW is a Spanish company founded in 2008.  NPAW's YOUBORA platform delivers

21   real-time data about content delivery networks to online video providers.  In February 2016,

22   NPAW announced its first North American office in New York City.  Shortly thereafter, on

23   March 29, 2016, Plaintiff filed its initial Complaint against NPAW.  Dkt. No. 1.  The Complaint

24   alleged infringement of U.S. Patent Nos. 8,874,725 ("'725 patent"), 9,100,288 ("'288 patent"),

25   and 9,246,965 ("'965 patent").  *Id.*  Plaintiff never served its Complaint.

26

Over a month later, Plaintiff filed and served an Amended Complaint, which alleged, for

27   the first time, that NPAW improperly obtained Plaintiff's "Proprietary Information and trade

28   secrets" from Plaintiff's customer Wuaki.tv. Dkt. No. 11 ¶¶ 40-50.  Plaintiff spins this allegation

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFENDANTS NICEPEOPLEATWORK, S.L.'S AND
NPAW, INC.'S MOTION TO DISMISS
CASE NO. 3:16-CV-01543-VC

1    into three separate state law claims: intentional interference with contractual relations, unfair

2    competition, and trade secret misappropriation.[1]  *Id.* ¶¶ 109, 112, 116.  Plaintiff does not explain

3    why it could not have brought its state law claims in the original Complaint, even though the

4    underlying facts allegedly occurred as early as 2011.  *Id.* ¶¶ 40, 48.  Nor does Plaintiff specify

5    what it means by "Proprietary Information and trade secrets," other than to vaguely allege that

6    they include (i) "the architecture of [Plaintiff's] platform" (*id.* ¶ 35); (ii) "support and

7    information provided by Conviva to its customers" (*id.* ¶ 37); (iii) "technical specifications,

8    technical support, software, policies and integration guidelines" (*id.*); and (iv) "portions of

9    Conviva's code and documentation" (*id.* ¶ 49).

10   **B.      The '725 And '288 Patents**

11         The '725 and '288 patents, which share a materially identical specification, describe

12   monitoring and reporting status information about a media content player, such as an online

13   video player.  '725 patent at 3:60-64.

14         The patents explain that "[u]sers are increasingly using networks such as the Internet to

15   access content, such as video files and live streaming/video on demand content, via client

16   machines."  *Id.* at 1:25-27.  According to the patents, however, there is a need to monitor and

17   collect data about the performance of the content player (such as the quality of the video and

18   delays in playback) and the behavior of the user (such as whether the user is stopping and

19   starting the video or playing it in full screen mode) in order to "detect and remedy problems in

20   the content distribution" such as "freezing, and frame

21   skipping."     *Id.* at 3:31-66.   The patents' purportedly

22   inventive solution is to collect and report such information,

23   as illustrated in Figure 3's two-step flowchart (pictured at

24   right).



25

26

27   _____

     [1]      The Amended Complaint also names NPAW's founders, Ferran Gutierrez and Sergi
28   Verges, as individual defendants with respect to the intentional interference with contractual
     relations and unfair competition claims only.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFENDANTS NICEPEOPLEATWORK, S.L.'S AND
NPAW, INC.'S MOTION TO DISMISS
CASE NO. 3:16-CV-01543-VC

1    The patents emphasize that the supposed "invention" is broad: it can be implemented in

2    "numerous ways" using "general components" on *any* type of computing device (such as

3    "personal computers, laptops, cellular phones/personal digital assistants, and other types of

4    information appliances."). *Id.* at 2:54-56. The implementation "details" in the specifications are

5    purely "for the purpose of example," and are not part of the claimed invention. *Id.* at 2:35-38.

6    Also, *any* status information can be monitored about *any* type of content player. *Id.* at 3:28-42,

7    47-51.

8    The claims are equally non-specific. Claim 1 of the '725 patent is representative (*see*

9    App'x). The other independent claims of the '725 patent recite a computer method (claim 12)

10   and computer media storing instructions (claim 13) for performing the same steps. The

11   independent claims of the '288 patent (system claim 1, method claim 22, and computer medium

12   claim 23) recite the same functionality, except they provide for obtaining the status information

13   by "making one or more [unspecified] inferences."

14   The patents' dependent claims add various nominal details. The '725 patent's dependent

15   claims specify that the processor calculates unspecified statistics (claims 2 and 14), the content

16   player is "configured to play a content item" (claim 3), certain information is collected (such as

17   the video quality or volume) (claims 4-11), and the information collection is adjusted (claims 15-

18   18, 8). Similarly, the dependent claims of the '288 patent specify that the content player is

19   running (claim 2) and that certain information is collected or inferences are made (claims 2-21).

20   **C.      The '965 Patent**

21   The '965 patent relates to determining the best source and quality of online video content

22   based on historical data. The specification explains that "[u]nfortunately, the client [*i.e.*, the

23   user's device] may not receive the content from the most appropriate source, or in the most

24   appropriate bitrate [*i.e.*, quality]." '965 patent at 1:23-25. The patent's purported solution is to

25   "predict" the appropriate source and quality by looking at what has worked for similar client

26   devices. As the specification explains, the client's "attributes" (such as "IP address," operating

27   system, browser type, etc.) are "used to determine a set of other client devices that are correlated

28   with [the] client" and their "[h]istorical performance … is evaluated to determine a content

3

1    source and/or bitrate for [the] client." *Id.* at 4:9-30.  The specification admits that this basic

2    approach "can be implemented in numerous ways," using generic computer technology (such as

3    a "processor" or other "general component[s]") and is applicable to any video playback device,

4    any video content, any means of providing the content, any internet provider, and any

5    communication channel.  *See id.* at 1:56-4:33.

6        Independent claim 1 is representative (*see* App'x).  The other independent claims are a

7    method (claim 20) and a computer medium (claim 21) for performing the same steps.  The

8    dependent claims specify the "attributes" used to correlate with other clients (claims 2-7) and

9    include various details about the client's request for instructions (claims 8-14) and the

10   instructions provided to the client (claims 15-19).

## II.    LEGAL STANDARD

12       Motions to dismiss under Rule 12(b)(6) should be granted if the complaint lacks a

13   cognizable legal theory.  *Papst*, 2016 WL 3196657, at *6.  Patent-eligibility under § 101 is a

14   question of law that is routinely resolved on the pleadings—even before formal claim

15   construction or fact development.  *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d

16   1343 (Fed. Cir. 2015) (claims invalid under § 101 on the pleadings); *OIP Techs., Inc. v.*

17   *Amazon.com, Inc.*, 788 F.3d 1359, 1360 (Fed. Cir. 2015) (same); *Content Extraction &*

18   *Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (same);

19   *Papst*, 2016 WL 3196657, at *1, *6-7 (same).

## III.   ARGUMENT

### A.    The Asserted Patent Claims Are Invalid Under 35 U.S.C. § 101

22       Section 101 of the Patent Act provides that "[w]hoever invents or discovers any new and

23   useful process, machine, manufacture, or composition of matter, or any new and useful

24   improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of

25   this title."  35 U.S.C. § 101.  As the Supreme Court has long recognized, § 101 "contains an

26   important implicit exception" for abstract ideas, including mental processes.  *See Alice*, 134 S.

27   Ct. at 2354; *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972).  Such ideas are not patent eligible as a

28   matter of law because they are basic tools in the "storehouse of knowledge" that are "free to all

4

1    . . . and reserved exclusively to none."   *Bilski v. Kappos*, 561 U.S. 593, 602 (2010).

2    "'[M]onopolization of those tools through the grant of a patent might tend to impede innovation

3    more than it would tend to promote it,' thereby thwarting the primary object of the patent laws."

4    *Alice*, 134 S. Ct. at 2354.  The Supreme Court's two-part framework from *Alice* governs § 101's

5    threshold eligibility standard.  *Id.* at 2355, 2360.

6        At *Alice* step one, the Court asks whether the claims are, at their core, directed to an

7    abstract idea.  *Id.*  "An abstract idea does not become nonabstract by limiting [it] to a

8    . . . technological environment, such as the Internet."  *Intellectual Ventures I LLC v. Capital One

9    Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).   The Court must determine whether,

10   notwithstanding computer implementation, the "heart" of the claims—the "most important

11   aspect"—amounts to an abstract idea.  *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714

12   (Fed. Cir. 2014) (identifying abstract idea at the "heart" of claims); *Internet Patents Corp.*, 790

13   F.3d at 1348 (determining that "essential, 'most important aspect'" is abstract idea).

14       At *Alice* step two, the Court determines whether the other claim elements add

15   "significantly more" to the abstract idea—something "inventive"—that is "sufficient to

16   'transform' the claimed abstract idea into a patent-eligible application."   134 S. Ct. at 2357

17   (citation omitted).   The prohibition on patenting abstract ideas cannot be circumvented by

18   dressing up an abstract idea with inconsequential steps or features.  *See id*. at 2359.  Taking an

19   abstract idea and adding "well-understood," "routine," or "conventional" activities—or limiting

20   the idea to a particular technological environment or field of use—contributes nothing inventive

21   and risks preempting the idea itself.  *Id*. at 2359 (citation omitted).  For example, patentees

22   cannot merely recite generic computer or networking functions and components to perform the

23   idea without specifying "how [they are] specially programmed to perform the steps claimed"

24   (*Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012)) and "how the result is

25   accomplished" (*Internet Patents Corp.*, 790 F.3d at 1344, 1348).  These principles apply equally,

26   whether a claim is couched as a computer method, system, or medium.  *Alice*, 134 S. Ct. at 2360.

27       In *Alice*, for example, although the claims purported to describe "a computerized scheme

28   for mitigating 'settlement risk,'" the Supreme Court found over 200 method, system and medium

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFENDANTS NICEPEOPLEATWORK, S.L.'S AND
NPAW, INC.'S MOTION TO DISMISS
CASE NO. 3:16-CV-01543-VC

1    claims ineligible because they merely recited performing the abstract idea of intermediated

2    settlement using "purely functional and generic" computer components (such as a "data

3    processing system" and "communications controller") and "generic computer functions" (such as

4    obtaining and adjusting user data).  *Id.* at 2352, 2359-60.  Likewise, the Federal Circuit and this

5    Court have repeatedly found computer-implemented claims invalid under § 101.  *E.g.*, *TLI*, 823

6    F.3d at 611-15; *Intellectual Ventures*, 792 F.3d at 1366, 1369-70; *Internet Patents Corp.*, 790

7    F.3d at 1348-49; *Content Extraction*, 776 F.3d at 1346-49; *Ultramercial*, 772 F.3d at 716-17;

8    *Papst*, 2016 WL 3196657, at *1; *OpenTV, Inc. v. Apple Inc.*, No. 5:15-CV-02008-EJD, 2016 WL

9    344845, at *5 (N.D. Cal. Jan. 28, 2016).

10       Under the *Alice* framework, the asserted patent claims here are ineligible because they

11   are directed to abstract ideas and mental processes and add only non-inventive elements (generic

12   computer components, field-of-use limitations, data-gathering steps, and other routine features).

13                    **1.      The '725 And '288 Patents Are Not Patent-Eligible**

14       At *Alice* step one, the '725 and '288 patent claims are directed to the age-old abstract idea

15   of status reporting.  Representative claim 1 of the '725 patent and each of the other claims recite

16   this concept as a series of three basic, functional steps: (1) "obtain[ing]" "status information,"

17   (2) "summarizing" it, and (3) "report[ing]" it.  '725 patent cl. 1.  The other independent claims

18   recite minor variations on those same steps.  *Id.* at cl. 12, 13; '288 patent cl. 1, 20, 21.[2]  That the

19   claims recite the concept in a particular technological context or field of use—*i.e.*, reporting

20   status information on a media content player (such as a video player)—does not make it "any

21   less abstract."  *Intellectual Ventures*, 792 F.3d at 1367.  Notwithstanding the claims' generic

22   computer components, such as a non-specific "processor," "memory," and "communications

23   interface," the heart of the claims—the essential, most important aspect—is the abstract status-

24   reporting idea.  *See Ultramercial*, 772 F.3d at 714; *Internet Patents Corp.*, 790 F.3d at 1348.  As

25

26   [2]      The '725 and '288 patent claims' ineligibility can be evaluated collectively based on
27   representative claim 1 of the '725 patent because they are all "substantially similar and linked to
     the same abstract idea."  *Content Extraction*, 776 F.3d at 1348 (district court properly invalidated
28   242 computer claims in four patents based on two representative claims); *Papst*, 2016 WL
     3196657, at *13.  But the claims are invalid even if considered separately, as discussed below.

DEFENDANTS NICEPEOPLEATWORK, S.L.'S AND
NPAW, INC.'S MOTION TO DISMISS
CASE NO. 3:16-CV-01543-VC

1  the patents explain, the purported invention is about reporting "status information . . . on a

2  recurring basis" to allow an "operator" "to detect and remedy problems." '725 patent at 3:28-30,

3  60-64.

4        This status-reporting concept is something humans have done for centuries with or

5  without computers across numerous fields.  Indeed, it is the essence of all diagnostic or

6  monitoring processes.  It is the same activity, for example, that a nurse does in (1) "obtain[ing]"

7  status information about a patient (such as blood pressure), (2) "summarizing" it in a patient's

8  chart, and (3) "report[ing]" it to the doctor or hospital.  Similarly, credit card companies obtain

9  customers' status information (such as available credit line and timeliness) and summarize it in

10 reports to credit bureaus.  The same is true for military field commanders who periodically report

11 unit status to headquarters or home alarm systems that periodically report status to a monitoring

12 service.  In short, the status reporting concept here is something that "humans have always

13 performed" (*Content Extraction*, 776 F.3d at 1347)—a basic tool in the "storehouse of

14 knowledge" that is "free to all . . . and reserved exclusively to none."  *Bilski*, 561 U.S. at 602.

15       That concept is even more abstract than other computer-implemented concepts for status-

16 monitoring that the Supreme Court and Federal Circuit have found ineligible under § 101, such

17 as using a computer intermediary to track parties' financial status and permit a transaction only if

18 they have sufficient resources (*Alice*, 134 S. Ct. at 2356), monitoring the status of user's budget

19 to ensure expenses do not exceed a pre-set limit (*Intellectual Ventures*, 792 F.3d at 1369),

20 "retaining information in the navigation of online forms" (*Internet Patents Corp.*, 790 F.3d at

21 1348), and detecting fraud in Internet credit card transactions (*CyberSource Corp. v. Retail

22 Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011)).  It is also more abstract than concepts for

23 summarizing and categorizing data that the Federal Circuit has repeatedly held ineligible, such as

24 obtaining image data, extracting classification information, and storing based on classification

25 (*TLI*, 823 F.3d at 611-15); extracting, recognizing, and storing data from hard copy documents

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

1   (*Content Extraction*, 776 F.3d at 1347); categorizing and retransmitting data (*Cyberfone Sys.,*

2   *LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 991-92 (Fed. Cir. 2014)).[3]

3       In each case, the court recognized that, no matter how the claims were broken down or

4   recited in a particular computer "technological environment" (*Intellectual Ventures*, 792 F.3d at

5   1366), the underlying ideas were nonetheless abstract.  *See*, *e.g.*, *id.* at 1367-68; *Alice*, 134 S. Ct.

6   at 2360 (computer system claims directed to abstract idea).  The status reporting concept at issue

7   here—claimed as a sequence of basic steps for collecting, summarizing, and reporting status

8   information—is no less abstract and no more patent-eligible at *Alice* step one.  Far from the type

9   of "specific . . . improvement in computer capabilities" that might confer patent eligibility, *see*

10  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016), the '725 and '288 patent

11  claims and specifications "fail[] to provide any technical details for the tangible components, but

12  instead predominately describe[] the system and methods in purely functional terms," *TLI*, 823

13  F.3d at 612 (distinguishing *Enfish*).[4]

14      At *Alice* step two, the '725 and '288 patent claims add nothing inventive.  Representative

15  claim 1 of the '725 patent and the other independent claims only recite performing the steps of

16  the abstract idea using conventional computer functions (obtaining, processing, and transmitting

17  data) and generic computer components (a "processor," "memory," and "communications

18  interface").  '725 patent cl. 1, 12, 13; '288 patent cl. 1, 20, 21; *see also* '725 patent at 2:54-56

19  (claims require only "general components," such as "personal computers"); *supra* at 2-3.

20      Those are precisely the sort of "basic functions of a computer" and "purely functional and

21  generic" components that merely linked the use of the abstract idea to a "particular technological

22  environment" and did not make the claims eligible in *Alice*.  134 S. Ct. at 2360 (citation

23  omitted).  The Federal Circuit has held similarly basic computer functions and components

---

24  [3]     *See also*, *e.g.*, *GT Nexus, Inc. v. Inttra, Inc.*, No. C 11-02145-SBA, 2015 WL 6747142, at

25  *4 (N.D. Cal. Nov. 5, 2015) (ineligible claims directed to "transportation portal for storing and
    accessing container shipping status information"); *OpenTV, Inc.*, 2016 WL 344845, at *5

26  (ineligible claims directed to "controlling access to information by verifying credentials (via
    well-known encryption methods)").

27  [4]     *See also Papst*, 2016 WL 3196657, at *16-17; *Kinglite Holdings Inc. v. Micro-Star Int'l

28  *Co. Ltd.*, No. 14-cv-3009 (C.D. Cal. July 6, 2016); *Asghari-Kamrani v. United Servs. Auto.
    Ass'n*, No. 2:15cv478 (E.D. Va. July 5, 2016) (all distinguishing *Enfish*).

DEFENDANTS NICEPEOPLEATWORK, S.L.'S AND
NPAW, INC.'S MOTION TO DISMISS
CASE NO. 3:16-CV-01543-VC

1   insufficient in many other cases.  *See, e.g.*, *Intellectual Ventures*, 792 F.3d, at 1367-71 (using an

2   "interactive interface" and "break[ing down] and organiz[ing] … data according to some

3   criteria" and monitoring user data is non-inventive); *buySAFE, Inc. v.Google, Inc*., 765 F.3d

4   1350, 1355 (Fed. Cir. 2014) (sending data over network is "not even arguably inventive");

5   *Dealertrack*, 674 F.3d at 1333 ("selectively forwarding" information and forwarding reply data

6   is non-inventive); *CyberSource*, 654 F.3d at 1373-74 (matching new credit card transactions

7   against past transactions from the same Internet address is non-inventive).  Even when these

8   basic functions and components are viewed "as an ordered combination," they do not reveal a

9   "non-conventional and non-generic arrangement of known, conventional pieces" that might

10   provide an inventive concept.  *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, ---

11   F.3d ----, No. 2015-1763, 2016 WL 3514158, at *6 (Fed. Cir. June 27, 2016).  The arrangement

12   of method steps, hardware, and software set forth by the independent claims merely recites the

13   performance of an abstract idea in a particular technological context—which "cannot confer

14   patent eligibility."  *TLI*, 823 F.3d at 615.

15    It does not matter that some of the independent claims are couched as computer methods

16   while others are computer systems or computer readable media for performing the same steps.

17   They are "no different … in substance" and all fail for the "same reasons."  *Alice*, 134 S. Ct. at

18   2360.  Nor does limiting the abstract idea to reporting the status of a particular type of computer

19   component (a media "content player") make any difference.  That is a classic field of use

20   limitation that adds nothing inventive, just like the claims for obtaining data using a particular

21   type of hardware (conventional scanners) were nonetheless ineligible in *Content Extraction*, 776

22   F.3d at 1348, and the claims for providing access to a particular type of media content ("text

23   data, music data, [or] video data") were nonetheless ineligible in *Ultramercial*, 772 at F.3d at

24   712.  *See also, e.g.*, *Intellectual Ventures*, 792 F.3d at 1367; *Dealertrack*, 674 F.3d at 1334.

25    In addition, like other claims directed to computing systems ruled ineligible by the

26   Supreme Court and the Federal Circuit, the independent claims of the '725 and '288 patents are

27   fundamentally flawed because they "do[] not specify how the computer hardware and [software]

28   are specially programmed to perform the steps claimed."  *Dealertrack*, 674 F.3d at 1333 (citation

9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFENDANTS NICEPEOPLEATWORK, S.L.'S AND
NPAW, INC.'S MOTION TO DISMISS
CASE NO. 3:16-CV-01543-VC

omitted).  Instead, they are drafted in highly generalized functional language and only express a general methodology for status reporting.  *See*, *e.g.*, '288 patent cl. 1 (reciting "monitoring module configured to obtain status information").  At most, the claims recite "a 'software' 'brain' tasked" with performing the abstract idea.  *Intellectual Ventures*, 792 F.3d at 1371 ("interactive interface" is non-inventive).  Such "vague, functional" terms, "devoid of technical explanation as to how to implement the invention," are insufficient to confer patent-eligibility.  *TLI*, 823 F.3d at 615; *see also, e.g.*, *Papst*, 2016 WL 3196657, at *14 ("'critically absent'" was "an explanation of *how* the expert system or modules actually carried out the claimed functions" (quoting *Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*, 635 F. App'x 914, 918 (Fed. Cir. 2015)).

In fact, as discussed, the claims' core concept (status reporting) has long been performed with or without computers.  That further confirms that the concept underlying the claims fundamentally does not need a computer in the first place, and thus implementing it in a computer environment does not meaningfully limit the claims.  *See Benson*, 409 U.S. at 67 (ineligible computer-implemented claims performable "mentally" "without a computer"); *CyberSource*, 654 F.3d at 1373 (ineligible computer-implemented claims performable with "pencil and paper").[5]

Finally, the dependent claims likewise add nothing inventive.  *See supra* at 3.  Most of them specify what type of status information or characteristics are determined about the player ('725 patent cl. 4-11; '288 patent cl. 3-21)—which are inconsequential.  *See Dealertrack*, 674 F.3d at 1334 (specifying particular type of information is non-inventive field-of-use limitation).  Others specify that the content player can play (or is playing) content ('725 patent cl. 3; '288 patent cl. 2)—which is a quintessential routine limitation.  *See Alice*, 134 S. Ct. at 2359 (routine activity is non-inventive).  The rest provide for collecting statistics—which is mere data-gathering.  *See Ultramercial*, 772 F.3d at 716 (data gathering is non-inventive); *OIP*, 788 F.3d at

---

[5]     *Cf. DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256-59 (Fed. Cir. 2014) (eligible claims recited innovative, detailed solution to uniquely computer-centric problem); *Bascom*, 2016 WL 3514158, at *6 (eligible claims recited "specific, discrete implementation" with "particular arrangement of elements" that was a "technical improvement").

1   1363-64.  Under established law, therefore, the claims add only insignificant limitations that do

2   not make the claims patent eligible.

3               **2.      The '965 Patent Lacks Patent-Eligible Subject Matter**

4        At *Alice* step one, the '965 patent claims are also directed an abstract idea: making

5   predictions based on historical data.  Representative claim 1 and each of the other claims recite

6   that concept as applied in a particular technological context (*i.e.*, predicting the best source and

7   video quality for someone seeking to stream video content) as a series of functional steps:  (1)

8   receive a client's request for instructions on obtaining a video, (2) correlate the client's

9   "attributes" (such as the client location, "IP address") with similar clients, (3) "predict" the

10  appropriate source ("content source") and quality ("bitrate") for the client based on the historical

11  track record of the similar clients, and (4) instruct the client accordingly.[6]  A human could

12  perform all of those basic data collection and correlation activities—which is the hallmark of an

13  abstract idea.  *See, e.g.*, *Content Extraction*, 776 F.3d at 1347; *CyberSource*, 654 F.3d at 1373-

14  74.  Indeed, the concept of making predictions based on historical data is ubiquitous and

15  longstanding—prevalent in everything from science (*e.g.*, predicting which treatment is best for

16  a given patient based on past data) to sports (*e.g.*, predicting which baseball player will be most

17  successful in a given scenario based on past data).

18       The  claims  are  strikingly  similar  to  other  computer-implemented  claims  involving

19  making predictions based on correlating historical internet data that the Federal Circuit found

20  were directed to abstract ideas and invalid under § 101.  For example, in *CyberSource*, the claims

21  recited a method for predicting whether an online credit card transaction is fraudulent by (1)

22  "obtaining information about other transactions that have utilized an Internet [IP] address that is

23  identified with the [ ] credit card transaction"; (2) "constructing a map of credit card numbers

24  based upon the other transactions"; (3) "utilizing the map of credit card numbers to determine if

25  the credit card transaction is valid."  654 F.3d at 1373-74.  As the Federal Circuit held, that is

26  basic data-gathering and data-correlating ("logical reasoning") that humans can perform with pen

27  _____

28  [6]    The '965 patent claims' ineligibility can be evaluated collectively based on representative
    claim 1, *see supra* at 6 n.2, but the claims are invalid even if considered separately.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFENDANTS NICEPEOPLEATWORK, S.L.'S AND
NPAW, INC.'S MOTION TO DISMISS
CASE NO. 3:16-CV-01543-VC

and paper or mentally.  *Id.* at 1372, 1373.  Similarly, in *OIP* the claims recited a method for collecting data from remote devices to allow a central unit to monitor customer reactions to past prices and predict the optimal future prices.  788 F.3d at 1361.  And, in *Intellectual Ventures*, the claims recited providing customized web content (predicting a user's preferences) based on the user's characteristics and browsing history.  792 F.3d at 1369-70.  The Federal Circuit found the claims in those cases drawn to abstract ideas.

The same is true here: predicting optimal outcomes based on historical data (just like predicting internet credit card fraud, future internet pricing, or user internet content preferences) is equally abstract.  That idea is also akin to the data classification concepts found abstract, as discussed above.  *Supra* at 7; *TLI*, 823 F.3d at 611-15; *Content Extraction*, 776 F.3d at 1347.  As in those cases, the abstract idea here "does not become nonabstract" by reciting it in a "particular . . . technological environment" with generic computer components, or "limiting [it] to a particular field of use" (finding the best source and quality for online videos).  792 F.3d at 1366.  As in such cases, the '965 claims recite no "specific . . . improvement in computer capabilities" that might confer patent eligibility, *see Enfish*, 2016 WL 2756255, at *5, and are directed to an abstract idea at *Alice* step one.

At *Alice* step two, the '965 patent claims (like the other asserted patent claims) add nothing inventive.  Representative claim 1 and the other independent claims only recite performing the steps using basic computer functions:  receiving a client's request for instructions on obtaining video, looking up data about other clients, "partition[ing]" (*i.e.*, categorizing) the other clients based on their "attributes" and "correlat[ing]" them with the current client, using the other clients' "past download performance" to "predict" the best "content source" (*i.e.*, location) and "bitrate" (*i.e.*, quality), and providing the client with instructions on retrieving the video. Those are the same functions found non-inventive in other cases.  *See, e.g.*, *Alice*, 134 S. Ct. at 2359 (receiving requests to enter into transactions, comparing parties' financial status to ensure sufficient resources, and issuing automated instructions); *TLI*, 823 F.3d at 611-15 (classifying image data); *Ultramercial*, 772 F.3d at 712 (receiving and processing requests for online media content); *CyberSource*, 654 F.3d at 1375 (correlating credit card transaction data to historical

12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFENDANTS NICEPEOPLEATWORK, S.L.'S AND
NPAW, INC.'S MOTION TO DISMISS
CASE NO. 3:16-CV-01543-VC

1    data to predict fraud).

2         Also, the independent claims only recite conventional computer components.   For

3    example, as the specification admits, the "processors" and "memory" include any "general

4    component[s]" that are "configured to perform a task" and can include "personal computers,

5    laptops," and the like.  '965 patent at 1:54-2:3, 2:34-38.  And the "Content Delivery Network

6    (CDN)" and "CDN node" are generic labels for the network and location where the content can

7    be accessed.  *Id.* at 2:27-61.  Those general-purpose components do not make the claims patent-

8    eligible.  *See, e.g.*, *Alice*, 134 S. Ct. at 2359-60.  Even viewed as an ordered combination, the

9    claim elements do nothing more than recite the performance of an abstract idea using

10   conventional computer components, as in the cases discussed.  *See id.*; *supra* at 9; *cf. Bascom*,

11   2016 WL 3514158, at *6.

12        Moreover, the independent '965 patent claims are flawed because they recite only

13   "vague, functional" terms and nowhere explain *how* to implement the prediction idea—no

14   specialized hardware or programming.  *See TLI*, 823 F.3d at 615; *Internet Patents Corp.*, 790

15   F.3d at 1344, 1348; *Dealertrack*, 674 F.3d at 1333; *supra* at 10.  As discussed, the claims are

16   described in general terms and are fundamentally directed to basic human mental activity

17   (making predictions based on historical data), which further shows that they lack any inventive

18   contribution.  *See Benson*, 409 U.S. at 68; *CyberSource*, 654 F.3d at 1373; *cf. DDR Holdings*,

19   773 F.3d at 1256-59.   Whether couched as a computer method, system, or medium, the

20   independent claims all fail for the same reasons.  *See Alice*, 134 S. Ct. at 2360.

21        Finally, the '965 patent's dependent claims likewise add nothing inventive because they

22   only specify which "attributes" to use in correlating the data (claims 2-7) and recite routine steps

23   regarding receiving the client's request for instructions and providing the instructions to the

24   client (claims 8-19).  *See*, *e.g.*, *Alice*, 134 S. Ct. at 2359 (routine steps for processing requests are

25   non-inventive); *Dealertrack*, 674 F.3d at 1334 (specifying information type is non-inventive).

26        In sum, the asserted patent claims are ineligible because they are directed to abstract

27   ideas and merely describe those ideas in functional and aspirational terms in a technological

28

13

DEFENDANTS NICEPEOPLEATWORK, S.L.'S AND
NPAW, INC.'S MOTION TO DISMISS
CASE NO. 3:16-CV-01543-VC

context, but without providing meaningful details.  Plaintiff's patent infringement claims should

be dismissed.

### B. Plaintiff's Claim For Intentional Interference With Contractual Relations And Unfair Competition Are Superseded By CUTSA

The California Uniform Trade Secrets Act ("CUTSA") "supersedes claims based on the

misappropriation of confidential information, whether or not that information meets the statutory

definition of a trade secret."  *Mattel, Inc. v. MGM Entm't, Inc.*, 782 F. Supp. 2d 911, 987 (C.D.

Cal. 2011).  Intentional interference with contractual relations and unfair competition claims are

superseded when they are "based on the same nucleus of operative facts" as trade secret claims.

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 90 Cal. Rptr. 3d 247, 261 (2009).

In *Farmers Insurance Exchange v. Steele Insurance Agency, Inc.*, the court found

intentional interference claims preempted when the "allegations that [Defendants] intentionally

induced [another] to breach his contract with [Plaintiff] by stealing Plaintiffs' trade secret

information *merely restates* Plaintiffs' allegations that [Defendants] 'misappropriated

[Plaintiffs'] trade secrets by . . . retaining or utilizing [Plaintiffs'] Proprietary Information.'"  No.

2:13-CV-00784, 2013 WL 3872950, at *9 (E.D. Cal. July 25, 2013).  The same result follows

here.  Plaintiff's intentional interference and unfair competition allegations *merely restate*

Plaintiff's trade secret misappropriation allegation:

| Trade Secret Misappropriation | Intentional Interference With Contractual Relations | Unfair Competition |
|---|---|---|
| "Defendants *wrongfully obtained Conviva's trade secret information* and misused that information to create their own competing business." (Compl. ¶ 116.) | "Specifically, NPAW, Gutierrez, and Verges *sought and obtained Conviva's Proprietary Information*, including Conviva trade secrets, from Wuaki.tv ...." (*Id.* ¶ 109.) | "NPAW, Gutierrez, and Verges intentionally interfered with Conviva's contracts with Wuaki.tv by *inducing Wuaki.tv to share with them Conviva's Proprietary Information ....*" (*Id.* ¶ 112.) |

The "gravamen of the wrongful conduct" for all three claims is the *same*: that NPAW obtained

Plaintiff's trade secrets from Wuaki.tv.  *Gabriel Techs. Corp. v. Qualcomm Inc.*, No. 08-cv-

1992, 2009 WL 3326631, at *12 (S.D. Cal. Sept. 3, 2009) (dismissing claims where "[t]he

gravamen of the wrongful conduct is the same").

Tellingly, Plaintiff's trade secret misappropriation claim incorporates by reference the

14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFENDANTS NICEPEOPLEATWORK, S.L.'S AND
NPAW, INC.'S MOTION TO DISMISS
CASE NO. 3:16-CV-01543-VC

*entirety* of Plaintiff's allegations about intentional interference and unfair competition.  (Compl. ¶ 115.)  Stripping away the trade secret misappropriation allegations leaves the Complaint bereft of even a single allegation relating to intentional interference and unfair competition.  *Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*, No. C 08-3931 RS, 2009 WL 55178, at *5 (N.D. Cal. Jan. 7, 2009) ("If the 'trade secret' facts are removed from claims [of unfair competition and intentional interference], neither retains sufficient independent facts to survive.").

### C.     Plaintiff Fails To State A Claim For Trade Secret Misappropriation

To survive a motion to dismiss, Plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade." *Synopsys, Inc. v. ATopTech, Inc.*, No. C 13-02965 SC, 2013 WL 5770542, at *5 (N.D. Cal. Oct. 24, 2013) (citations omitted).  A Complaint must be dismissed if "it is impossible . . . to determine where trade secret protection begins and ends." *Id.* at *6.  "[V]ague references to an enormous array of potential sources do not suffice to survive Defendant's motion to dismiss." *Id.* Here, the Amended Complaint identifies an "enormous array of potential sources" of trade secrets including: (i) "the architecture of [Plaintiff's] platform" (Compl. ¶ 35); (ii) "support and information provided by Conviva to its customers" (*id.* ¶ 37); (iii) "technical specifications, technical support, software, policies and integration guidelines" (*id.*); and (iv) "portions of Conviva's code and documentation" (*id.* ¶ 49).  This laundry list of "trade secrets" improperly "incorporate[s] everything about [Plaintiff's] business practices." *Jobscience, Inc. v. CVPartners, Inc.*, No. C 13-04519 WHA, 2014 WL 852477, at *4 (N.D. Cal. Feb. 28, 2014).[7]

## IV.   CONCLUSION

Defendants respectfully request that the Court dismiss Plaintiff's complaint in its entirety.

---

[7]     Plaintiff's identification of six documents and its "Developer Resource Center" does not save its Complaint.  Mere identification of documents, without identifying the trade secrets themselves, is not sufficient.  *S. Cal. Inst. of Law v. TCS Educ. Sys.*, No. CV 10-8026 PSG (AJWx), 2011 WL 1296602, at *7 (C.D. Cal. Apr. 5, 2011); *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095 (N.D. Cal. 2012).

15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFENDANTS NICEPEOPLEATWORK, S.L.'S AND
NPAW, INC.'S MOTION TO DISMISS
CASE NO. 3:16-CV-01543-VC

1    Dated:  July 25, 2016                    Respectfully submitted,

2                                             LATHAM & WATKINS LLP

3                                             By:  */s/ Richard G. Frenkel*
                                                   Richard G. Frenkel
4

5                                             RICHARD G. FRENKEL (SBN 204133)
                                              rick.frenkel@lw.com
6                                             LATHAM & WATKINS LLP
                                              140 Scott Drive
7                                             Menlo Park, California 94025
                                              T: (650) 328-4600; F: (650) 463-2600
8

9                                             MICHAEL A. MORIN (*pro hac vice* pending)
                                              michael.morin@lw.com
10                                            MATTHEW J. MOORE (*pro hac vice* pending)
                                              matthew.moore@lw.com
11                                            GABRIEL K. BELL (*pro hac vice* pending)
                                              gabriel.bell@lw.com
12                                            LATHAM & WATKINS LLP
                                              555 Eleventh Street, NW, Suite 1000
13                                            Washington, DC 20004
                                              T: (202) 637-2200; F: (202) 637-2201
14

15                                            Attorneys for Defendants

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFENDANTS NICEPEOPLEATWORK, S.L.'S AND
NPAW, INC.'S MOTION TO DISMISS
CASE NO. 3:16-CV-01543-VC

## APPENDIX: REPRESENTATIVE PATENT CLAIMS

**A.      '725 Patent Claim 1**

1.   A system for monitoring performance data associated with a content player, including:

a processor; and

a memory coupled with the processor, wherein the memory is configured to provide the processor with instructions which when executed cause the processor to:

obtain information relating to the status of the content player on a time driven basis;

process the obtained status information at least in part by summarizing at least a portion of the obtained status information; and

report, via a communications interface, at least a portion of the summarized status information to a content distribution monitoring server.

**B.      '288 Patent Claim 1**

1.   A system, including:

a processor configured to:

load a monitoring module configured to obtain status information associated with a content player;

obtain, at least in part by making one or more inferences using accessible data, status information associated with the content player, wherein the status information includes at least one of state information and player capability information; and

report, via a communications interface, at least a portion of the obtained status information to a monitoring service that is external to the system; and

a memory, coupled with the processor, and configured to provide the processor with instructions.

**C.      '965 Patent Claim 1**

1.   A system, comprising:

a set of one or more processors configured to:

receive an indication that a client requires video streaming instructions;

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.

DEFENDANTS NICEPEOPLEATWORK, S.L.'S AND
NPAW, INC.'S MOTION TO DISMISS
CASE NO. 3:16-CV-01543-VC

1    access a data store including information associated with a plurality of
         clients;

2    partition, based on a set of one or more attributes, the plurality of
3         clients to identify a subset of the plurality of clients that are
          correlated with the client requiring video streaming instructions;

4    aggregate past download performance for the identified subset of
5         clients that are correlated to the client requiring video streaming
          instructions;

6    use the aggregated past download performance for the identified
7         subset of correlated clients to predict, at least one of: a content
          source, and a bitrate, for the client requiring video streaming
8         instructions, wherein the content source comprises at least one of:
          a Content Delivery Network (CDN) and a CDN node; and provide
9         the client with instructions based at least in part on the prediction;
          and

10   a memory coupled to the set of one or more processors and configured to
11        provide the set of one or more processors with instructions.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                           2

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
WASHINGTON, D.C.