SHANE BRUN (SBN 179079)
*sbrun@goodwinlaw.com*
RACHEL M. WALSH (SBN 250568)
*rwalsh@goodwinlaw.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center, 24th Floor
San Francisco, California 94111
Tel.:    415.733.6000
Fax.:    415.677.9041

LANA S. SHIFERMAN (*pro hac vice*)
*lshiferman@goodwinlaw.com*
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, Massachusetts 02210
Tel.:    617.570.1000
Fax.:    617.523.1231

Attorneys for Plaintiff
CONVIVA INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| CONVIVA INC., | Case No.  3:16-cv-01543-VC |
| Plaintiff, | **PLAINTIFF CONVIVA INC.'S OPPOSITION TO DEFENDANTS NICEPEOPLEATWORK, S.L. AND NPAW, INC.'S MOTION TO DISMISS** |
| v. | |
| NICEPEOPLEATWORK, S.L., NPAW, Inc., FERRAN GUTIERREZ and SERGI VERGES, | Hearing Date: September 8, 2016 |
| Defendants. | Time:          10:00 a.m. |
| | Department:  4 - 17th Floor |
| | Judge:        Hon. Vince Chhabria |
| | Action Filed:  March 29, 2016 |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

I.      FACTUAL BACKGROUND OF THE PATENTED INVENTIONS ............................. 1

II.     LEGAL STANDARDS - PATENT-ELIGIBLE SUBJECT MATTER ........................... 3

III.    ARGUMENT ..................................................................................................... 5

     A.      NPAW Fails To Show That Any Asserted Claims Are Invalid Under § 101......... 5

           1.     The '725 Patent Claims Are Not Directed To An Abstract Idea. .............. 5

           2.     The '725 Patent Claims Contain Inventive Concepts ................................ 7

           3.     The '288 Patent Claims Are Not Directed to an Abstract Idea. ................. 9

           4.     The '288 Patent Claims Contain Inventive Concepts ............................. 10

           5.     The '965 Patent Claims Are Not Directed to an Abstract Idea. ............... 11

           6.     The '965 Patent Claims Contain Inventive Concepts. ............................. 12

     B.      NPAW's Motion is Deficient Because It Fails to Address Each Claim .............. 12

     C.      Defendants' Preemption Arguments Are Premature And Meritless. ................... 13

     D.      Conviva Has Sufficiently Pleaded Trade Secret Misappropriation ..................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AirDefense, Inc. v. Airtight Networks, Inc.*,
    2006 WL 2092053 (N.D. Cal. July 26, 2006) ........................................................ 14

*Alice Corp. Pty. Ltd. v. CLS Bank* Int'l,
    134 S. Ct. 2347 (2014) .................................................................... 3, 4, 5, 11

*Amron Intern. Diving Supply, Inc. v. Hydrolinx Diving Commc'n, Inc.*,
    2011 WL 5025178 (S.D. Cal. Dec. 20, 2013) ........................................................ 14

*Angelica Textile Servs., Inc. v. Jaye Park*,
    220 Cal. App. 4th 495 (2013) ...................................................................... 13, 15

*Ass'n for Molecular Pathology v. USPTO*,
    702 F. Supp. 2d 181 (S.D.N.Y. 2010), aff'd, Ass'n for Molecular Pathology v.
    Myriad Genetics, Inc., 133 S. Ct. 2107 (2013 ) ........................................................ 8

*Autodesk, Inc. v. ZWCAD Software Co.*,
    2015 WL 2265479 (N.D. Cal. May 13, 2015) ........................................................ 14, 15

*Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*,
    2009 WL 55178 (N.D. Cal. Jan. 7, 2009) ........................................................ 14

*Bancorp Servs., LLC v. Sun Life Assurance Co. of Can. (US)*,
    687 F.3d 1266 (Fed. Cir. 2012) ........................................................................ 8

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*,
    2016 WL 3514158 (Fed. Cir. June 27, 2016) ........................................................ 5, 7, 8, 12

*Brescia v. Angelin*,
    172 Cal.App.4th 133 (2009) ........................................................................ 15

*California Inst. of Tech. v. Hughes Commc'ns Inc.*,
    59 F. Supp. 3d 974 (C.D. Cal. 2014) ........................................................ 8, 11

*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*,
    2016 WL 283478 (N.D. Cal. Jan. 25, 2016) ........................................................ 8

*Chrimar Sys., Inc. v. Alcatel-Lucent USA, Inc.*,
    No. 6:15-cv-163-JDL, slip op. (E.D. Tex., July 29, 2016) ........................................................ 6, 7, 10

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
    776 F.3d 1343 (Fed. Cir. 2014) ........................................................ 10, 11

*Cybersource Corp., v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011) ........................................................................ 11

*DDR Holdings v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 201) .......................................................... 5, 8, 10, 12

*Diamond v. Diehr*,
   450 U.S. 175 (1981) ................................................................................... 4, 13

*Digitech Image Techs. v. Elecs. For Imaging, Inc.*,
   758 F.3d 1344 (Fed. Cir. 2014) ...................................................................... 13

*Diodes, Inc. v. Franzen*,
   260 Cal. App. 2d 244 (Cal. Ct. App. 1968) ..................................................... 15

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016) .................................................................. 4, 5, 7

*Farmers Insurance Exchange v. Steele Insurance Agency*,
   2013 WL 3872950 (E.D. Cal. July 25, 2013) .................................................. 14

*Fr. Telecom S.A. v. Marvell Semiconductor Inc.*,
   39 F.Supp. 3d 1080 (N.D. Cal. 2014) .............................................................. 13

*Gabriel Technologies Corp. v. Qualcomm Inc.*,
   2009 WL 3326631 (S.D. Cal. Sept. 3, 2009) .................................................... 14

*Genetic Techs. Ltd. v. Agilent Techs., Inc.*,
   24 F. Supp. 3d 922 (N.D. Cal. 2014) ................................................................. 8

*In re TLI Commc'ns LLC Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016) .................................................................... 11, 12

*Intellectual Ventures I, LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015) ....................................................................... 11

*Iron Gate Sec., Inc. v. Lowe's Cos., Inc.*,
   2016 WL 4146140 (S.D.N.Y. Aug. 3, 2016) ......................................... 4, 6, 8, 11

*Jobscience, Inc. v. CVPartners, Inc.*,
   2014 WL 852477 (N.D. Cal. Feb. 28, 2014) .................................................... 15

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
   90 Cal. Rptr. 3d 247 (2009) ..................................................................... 13, 14

*Klaustech, Inc. v. AdMob, Inc.*,
   2015 WL 10791915 (N.D. Cal. Aug. 31, 2015) .................................................. 6

*Kovesdy v. Kovesdy*,
   2010 WL 3619826 (N.D. Cal. Sept. 13, 2010) ................................................. 14

*Mattel, Inc. v. MGA Entertainment, Inc.*,
   782 F. Supp. 2d 911 (C.D. Cal. 2011) ............................................................. 14

*MedioStream, Inc. v. Microsoft Corp.*,
   869 F. Supp. 2d 1095 (2012) ........................................................................... 15

*Network Congestion Sols., LLC v. U.S. Cellular Corp.*,
2016 WL 1129210 (D. Del. Mar. 22, 2016) ............................................................. 6, 7, 11

*Phoenix Techs. Ltd. v. DeviceVM*,
2009 WL 4723400 (N.D. Cal. Dec. 8, 2009). ......................................................... 14

*Prolifiq Software Inc. v. Veeva Sys. Inc.*,
2014 WL 2527148 (N.D. Cal. June 4, 2014) ............................................................ 15

*Resonance Tech., Inc. v. Koninklijke Philips Elecs., N.V.*,
2008 WL 4330288 (C.D. Cal Sept. 17, 2008) .......................................................... 15

*Rovince Int'l Corp. v. Preston*,
2013 WL 5539430 (C.D. Cal. Oct. 7, 2013) ............................................................ 13

*S. Cal. Inst. of Law v. TCS Educ. Sys.*,
2011 WL 1296602 (C.D. Cal. April 5, 2011) ........................................................... 15

*Silvaco Data Systems v. Intel Corp.*
184 Cal. App. 4th 210 (2010) ................................................................................... 13

*Synopsys, Inc. v. ATopTech, Inc.*,
2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) .......................................................... 15

*Timeplay, Inc. v. Audience Entm't LLC*,
2015 WL 9695321 (C.D. Cal. Nov. 10, 2015) ........................................................... 8

*U.S. Legal Support, Inc. v. Hofioni*,
2013 WL 6844756 (E.D. Cal. Dec. 20, 2013) .......................................................... 14

*Ultramercial,Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014) ............................................................................... 4, 11

*What 4 LLC v. Roman & Williams, Inc.*,
2012 WL 1815629 (N.D. Cal. May 17, 2012) .......................................................... 13

**Statutes**

35 U.S.C. § 101 ..............................................................................................*passim*

35 U.S.C. § 282 ......................................................................................................... 13

Cal. Code of Civ. Proc. § 2019.210 ......................................................................... 15

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 8

Civ. L.R. 3-4(e) ....................................................................................................... 14

Nicepeopleatwork, S.L. and NPAW, Inc. ("NPAW") grossly mischaracterize Conviva's asserted claims to argue that the defined inventions are abstract. NPAW ignores several limitations, which, on their face, demonstrate that Conviva's patents are not directed to abstract ideas. NPAW also ignores the inventive concepts in the specifications. Viewed as a whole, the asserted claims describe patent eligible inventions. Further, NPAW improperly focuses on two claims without showing that these claims are representative of all of the claims it asks the Court to invalidate. Moreover, NPAW presents absolutely no evidence concerning the meanings of the claim terms. To consider the patentability issues raised, however, the Court must develop a full understanding of the basic character of the claims and the context of Conviva's inventions.

NPAW also argues that Conviva's claims for interference and unfair competition are preempted by the California Uniform Trade Secrets Act ("CUTSA"). But these claims do not depend on the existence of a trade secret and are not based on the same facts as Conviva's trade secret claims. Thus, the claims are not preempted. NPAW also challenges whether Conviva has sufficiently plead the existence of a protectable trade secret. But Conviva is not required to disclose its trade secrets in detail at the pleadings stage as part of a public filing. And Conviva has provided more than sufficient detail about its trade secrets in its Amended Complaint.

# I.     FACTUAL BACKGROUND OF THE PATENTED INVENTIONS

In the early days of the internet, users could only download and view short, low-resolution videos. By the time Conviva filed its first patent applications in 2006, users were creating and downloading content on YouTube, viewing live streams of sporting events, and receiving full-length high definition movies. Users expected the same or better media quality as cable or satellite TV, whether they were using a basic handheld device, or a powerful desktop PC. '225 prov. at 2.[1] But unlike cable or satellite, which used a "pipe" directly from the broadcaster to the television, internet media relied on a complex mixture of servers and networks: the "content distribution network." '725 pat at Fig.1; *see also* '428 prov. at 1-3, '066 prov. at 1. The content

---

[1] Conviva's patents—U.S. Patent Nos. 8,874,725 ("'725 pat"), 9,100,288 ("'288 pat"), and 9,246,965 ("'965 pat")—claim priority to and incorporate by reference provisional applications No. 60/859,428 ("'428 prov."), 61/227,066 ("'066 prov."), and 61/697,225 ("'225 prov."), which are attached as exhibits to the declaration of Shane Brun accompanying this Opposition.

1   distribution network—new technology made both possible and necessary by the internet—gave

2   rise to new problems unlike any in the old media world, and needed new solutions.

3       Because a user could access media from multiple locations, via multiple network paths, at

4   varying resolutions or bitrates, using a wide variety of content players, devices, and operating

5   systems—ensuring high-quality streaming video (with effective troubleshooting) was an almost

6   intractable problem:  First, media players were "typically built using standard commercially

7   available third party components which offer few, if any, monitoring capabilities" ('288 pat at

8   1:21-24) and performance data was often not "directly accessible for collection and transmission."

9   '288 pat at 8:46-49.  Second, monitoring and reporting competed for the same computing and

10  network resources as the player itself—too aggressive monitoring could itself degrade the player's

11  performance.  '725 pat at 7:47-51.  And because content was "available in multiple bitrates from

12  multiple sources," users would often not "receive the content from the most appropriate source, or

13  in the most appropriate bitrate." '965 pat at 1:20-25.  As a result, users experienced variable,

14  unpredictable, and unreliable video delivery.  *See generally,* '225 prov. at 3-10.

15      Conviva stepped into this void.  The '288 patent shows how to monitor and report a

16  content player's performance by "loading a monitoring module configured to obtain status

17  information associated with a content player" (because players lacked built-in monitoring

18  capabilities) and "making inferences using accessible data" (because useful metrics were often not

19  directly observable).  '288 pat at claim 1.  The patent shows how the monitoring module is built

20  using different technologies to obtain status information from different content players.  *Id.* at

21  4:12-5:42.  And the patent describes making inferences so that a content distribution monitor can

22  "nonetheless be provided with the state of the player."  *Id.* at 8:35-11:25 (*e.g.*, whether the player

23  is playing, buffering, or paused, processing speed, and available bandwidth).

24      The '725 patent addresses the problem of monitoring and reporting degrading the player

25  and network's performance, by "obtain[ing] information relating to the status of the content

26  player," "summarizing at least a portion of the obtained status information," and "repor[ting]

27  …the summarized status information to a content distribution monitoring server."  '725 pat at

28  claim 1.  Information is obtained "on a time driven basis" so as not to degrade player performance

PLAINTIFF CONVIVA INC.'S OPPOSITION TO DEFENDANTS
NICEPEOPLEATWORK, S.L. AND NPAW, INC.'S MOTION TO DISMISS        CASE NO. 3:16-CV-01543-VC

2

by adaptively adjusting the frequency of collection based on the system's capabilities and current performance.  *Id.* at 3:52-59, 7:47-8:17.  Similarly, when performance begins to degrade (*e.g.*, "utilization exceeds 80%"), the client sends less information by "summarizing" the data, for example by "includ[ing] aggregate measurements … instead of sending individual details" or aggregating measurements "over a longer time interval."  *Id.* at 8:26-43.

The '965 patent addresses the problem of controlling distribution of content to players for the best user experience.  Claim 1 recites "receiv[ing] an indication that a client requires video streaming instructions," "identify[ing] a subset of … clients that are correlated with the client requiring video streaming instructions," and using "aggregated past download performance" to predict a content source or a bitrate, and providing the client with instructions based on the prediction.  The patent explains that an "indication that a client requires instructions" includes both initial and continuing requests.  '965 pat at 3:4-6, 4:9-33.  The patent further describes how the collected performance metrics (such as buffering ratios and failures) are partitioned to identify clients correlated (similar clients under similar conditions) with the client requiring instructions.  *Id.* at 4:55-5:44.  And if there isn't enough data for a meaningful decision, partitions are combined by aggregating their data.  *Id.* at 5:45-54.  Finally, instructions are provided to the client, which can include redirecting the client to a new source.  *Id.* at 4:30-33.  Significantly, the invention not only corrects poor performance midstream, but identifies the best parameters and source before a client even begins to receive the video, thus preventing problems in the first place.

## II.    LEGAL STANDARD - PATENT-ELIGIBLE SUBJECT MATTER

An inventor may patent "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101.  While laws of nature, natural phenomena, and abstract ideas are not patentable (so as not to preempt entire fields or grant monopolies over abstract ideas), "an invention is not rendered ineligible for patent simply because it *involves* an abstract concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (emphasis added).  Indeed, the Supreme Court has cautioned that courts must "tread carefully in construing this exclusionary principle" because, "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract

1    ideas.'"  *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 132 S. Ct. 1289, 1293

2    (2012)).  Thus, for instance, "*application* of a law of nature or mathematical formula to a known

3    structure or process may well be deserving of patent protection."  *Diamond v. Diehr*, 450 U.S.

4    175, 187 (1981).  Similarly, claims which "improve the functioning of the computer itself," or

5    "improv[e] an existing technological process" may also be patent-eligible. *Enfish, LLC v.*

6    *Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (quoting *Alice*, 134 S. Ct. at 2358–59).

7    The Supreme Court set out a two-step test "for distinguishing patents that claim laws of

8    nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of

9    those concepts." *Alice*, 134 S. Ct. at 2355.  A court must first "determine whether the claims are

10   directed to one of those patent-ineligible concepts." *Id.* "If not, the claims pass muster under §

11   101."  *Ultramercial,Inc. v. Hulu, LLC.*, 772 F.3d 709, 714 (Fed. Cir. 2014).  Otherwise, the court

12   must "consider the elements of each claim both individually and 'as an ordered combination' to

13   determine whether the additional elements 'transform the nature of the claim' into a patent-eligible

14   application." *Alice*, 134 S.Ct. at 2355.  This step asks whether the claims contain "an 'inventive

15   concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in

16   practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"  *Id*.  The

17   key to an "inventive concept" is whether the limitations (alone *or* in combination) were not

18   conventional or routine in the relevant field at the time of the invention.  *Id.* at 2359.

19   The Federal Circuit has since invalidated patents claiming "fundamental economic and

20   conventional business practices," the addition of "conventional computer components to well-

21   known business practices," the "use of an abstract mathematical formula on any general purpose

22   computer," "purely conventional computer implementation of a mathematical formula" or

23   "generalized steps to be performed on a computer using conventional computer activity."  *Enfish*,

24   822 F.3d at 1335, 1338.  Such claims recited highly general computer implementations and did not

25   improve a specific technology or technical field, and were thus ineligible.  *See Iron Gate Sec., Inc.*

26   *v. Lowe's Cos., Inc.*, 2016 WL 4146140, at *7 (S.D.N.Y. Aug. 3, 2016)(collecting cases).

27   By contrast, the Federal Circuit has found claims patent-eligible where they solve "a

28   problem specifically arising in the realm of computer networks" (*DDR Holdings v. Hotels.com,*

1   *L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 201)), improve the functionality of a computer or computer

2   system (*Enfish*, 822 F.3d at 1338-39), or claim a particular, practical application of an abstract

3   idea—even if the application of the idea is on the internet.  *See Bascom Global Internet Servs.,*

4   *Inc. v. AT&T Mobility LLC*, 2016 WL 3514158, at *8 (Fed. Cir. June 27, 2016).

5   **III.    ARGUMENT**

6       **A.    NPAW Fails To Show That Any Asserted Claims Are Invalid Under § 101**

7       Conviva's '725 and '288 patents claim novel, concrete and tangible systems and methods

8   for monitoring the performance of a media player, which improves the player and permits the

9   media content to be delivered with a higher quality user experience.  Similarly, the '965 patent

10   claims a novel way of remotely controlling and configuring media players, again improving the

11   player and the distribution system.  These claims, which address issues arising out of specific

12   internet-centric technologies, are plainly patentable under § 101.

13       **1.    The '725 Patent Claims Are Not Directed To An Abstract Idea**

14       The threshold inquiry of the § 101 analysis requires the Court to determine whether ***each***

15   ***claim*** is directed to an "abstract idea," *i.e.*, an "idea of itself," fundamental truths, or fundamental

16   principles, the patenting of which would pre-empt the use of basic tools of scientific and

17   technological work.  *Alice*, 134 S.Ct. at 2354.  NPAW's assertion that the '725 patent is directed

18   to the abstract idea of "status reporting" is a gross mischaracterization and oversimplification, and

19   is contrary to the actual claim language.  No claim simply covers the concept of "status reporting."

20   NPAW wrongly and self-servingly "simply ask[s] whether the claims *involve* a patent-ineligible

21   concept."  *Enfish*, 822 F.3d at 1335 (citing *Mayo*) (emphasis in original).  The proper inquiry is to

22   consider the claims in light of the specification to ascertain "whether 'their character *as a whole* is

23   directed to excluded subject matter.'"  *Id.* (citing *Internet Patents Corp. v. Active Network, Inc.*,

24   790 F.3d 1343, 1346) (Fed. Cir. 2015) (emphasis added).  The abstract idea inquiry is also

25   informed by "the focus of the claimed advance over the prior art."  *Id.* (citing *Genetic Techs. Ltd.*

26   *v. Merial L.L.C.*, 818 F.3d 1369, 1375 (Fed. Cir. 2016)).

27       NPAW argues that the '725 patent would encompass nurses reporting blood pressure,

28   banks reporting credit histories, or military officers reporting to headquarters.  But even a cursory

1   review of the claims shows how absurd these straw-man examples are.  *See Iron Gate*, 2016 WL

2   4146140, at *8 ("The point is not to deem ineligible any task or concept that can possibly be

3   envisioned or performed by the human mind."); *Network Congestion Sols., LLC v. U.S. Cellular

4   Corp.*, 2016 WL 1129210, at *8 (D. Del. Mar. 22, 2016) (ability "to come up with a human

5   equivalent" does not make claims abstract).

6         Although claim 1 of the '725 patent "involves" obtaining, processing, and reporting

7   information, this information is "status of the content player on a time driven basis."  NPAW does

8   not even mention this limitation, and glosses over the limitation of "summarizing at least a portion

9   of the obtained status information."  But both limitations are key to the patent's purpose and the

10  improvement over the prior art.  The patent explains how "[t]he amount of data reported by the

11  client … can affect the scalability of the content distribution monitor" and how "[t]he amount of

12  data collected and reported by the client can also potentially impact the performance of the client."

13  '725 pat at 7:47-51.  The patent's solution includes varying the amount and frequency of

14  information collected and reported (*id.* at 7:47-8:43), which is at least one of the inventive

15  concepts embodied by the claims.

16        The asserted claims of the '725 patent are not inherently abstract.  *See, e.g., Klaustech, Inc.

17  v. AdMob, Inc.*, 2015 WL 10791915, at *3 (N.D. Cal. Aug. 31, 2015) (monitoring timing and

18  controlling display of advertising on the internet not abstract); *see also Network Congestion*, 2016

19  WL 1129210, at *8 ("alleviating congestion in a communication network" by monitoring and

20  adjusting data flows not abstract, notwithstanding "human equivalent" of 'resource control

21  management.'")  Like in *Chrimar Sys., Inc. v. Alcatel-Lucent USA, Inc.*, No. 6:15-cv-163-JDL,

22  slip op. at 12 (E.D. Tex., July 29, 2016), NPAW improperly "focus[es] on one aspect of the claim to

23  contend the claim is directed" to "status reporting" (Mot. at 6-8).  Properly "[l]ooking at the entirety of

24  the claim" reveals that the claim requires more than "status reporting" but also adjusting the

25  amount and frequency of reporting to avoid performance degradation specific to content

26  distribution networks and the techniques taught for doing so.  *Chrimar* at 12; *see* '725 pat at 7:36-

27  8:54, claims 1, 15-18.  These elements are central to the patents' inventive concepts and cannot be

28  ignored.  As in *Chrimar*, "the claimed configuration and corresponding structures were not added

1    post-hoc to a fundamental law of nature; rather, these structures provide a[] []specific solution to

2    [conveying] information in a network." *Id.* at 15-16.

### 2.    The '725 Patent Claims Contain Inventive Concepts

4            Even if the '725 patent claims could be boiled down to the abstract idea of "status

5    reporting" (a gross and inaccurate oversimplification), the claims are limited to the specific field

6    of streaming video in content players in a content distribution system, and add inventive concepts

7    to prevent monitoring and reporting from degrading performance.  '725 pat at 7:47-51.

8            The system of claim 1 "obtain[s] information relating to the status of the content player on

9    a time driven basis," adaptively adjusting the collection frequency based on the capabilities and

10   current performance of the system so as not to degrade player performance.  *Id.* at 3:52-59, 7:47-

11   8:17.  The system also sends "summarized status information to a content distribution monitoring

12   server" to reduce its performance impact.  *See id.* at 8:26-43 ("including aggregate measurements

13   … instead of sending individual details" or aggregating measurements "over a longer time

14   interval" when "utilization exceeds 80%").  These inventive concepts transform status reporting

15   into a "particular, practical application of [an] abstract idea," making the claims patent-eligible.

16   *Bascom Global*, 2016 WL 3514158, at *8 (limitations specifying location and requiring

17   customization of filtering system made claims patent-eligible); *see also Network Congestion,* 2016

18   WL 1129210, at *8 (claims reciting monitoring data flows and controlling data rate to reduce

19   congestion were patent-eligible).[2]  This is not "a situation where general-purpose computer

20   components are added post-hoc to a fundamental economic practice or mathematical equation.

21   Rather, the claims are directed to a specific implementation of a solution to a problem in the

22   software [and internet] arts."  *Enfish*, 822 F.3d at 1339.  They are not directed to an abstract idea.

23           Further, the solutions described in the '725 patent were neither routine nor conventional at

24   the time of invention.  And NPAW did not put forth any evidence that they were.  Indeed, at this

25   stage, "the Court must accept the specification's assertions – at least with respect to the claimed

26   invention's advantages over prior art – to be true on their face." *Iron Gate*, 2016 WL 4146140, at

27   _____

28   [2] NPAW argues that the specification claims that the invention is broad and can be implemented using general components on various computing devices.  (Mot. at 3).  But the "ability to run on a general purpose computer" does not make an invention abstract.  *Enfish*, 822 F.3d at 1338-39.

1   *13 (citing *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607,613-14 (Fed. Cir. 2016) (for a

2   § 101 analysis courts "must be mindful of extraneous fact finding outside the record, particularly

3   at the motion to dismiss stage")); *see also Bascom Global*, 2016 WL 3514158, at *7-8 (in a Rule

4   12(b)(6) motion to dismiss under § 101, claims must be construed in favor of the nonmovant).

5          There also is no risk of preemption.  The '725 claims include specific limitations that "are

6   not necessary or obvious tools for" status reporting.  *California Inst. of Tech. v. Hughes Commc'ns

7   Inc.*, 59 F. Supp. 3d 974, 995 (C.D. Cal. 2014); *see also DDR Holdings*, 773 F.3d at 1259 (claims

8   "do not attempt to preempt every application of the idea… Rather, they recite a specific way to

9   [perform the idea]…").  Contrary to NPAW's claims, nurses can continue reporting patients'

10  blood pressure, banks can continue reporting credit histories, and military officers can continue

11  reporting to headquarters without fear of infringement.  NPAW's failure to show that any '725

12  patent claim preempts all use of the alleged abstract idea of "status reporting" requires denying its

13  motion.  At least, this creates a factual issue inappropriate to resolve on a Rule 12(b)(6) motion.

14         Finally, while claim construction is not an absolute prerequisite, "it will ordinarily be

15  desirable—and often necessary—to resolve claim construction disputes prior to a [§] 101 analysis,

16  for the determination of patent eligibility requires a full understanding of the basic character of the

17  claimed subject matter."  *Bancorp Servs., LLC v. Sun Life Assurance Co. of Can. (US)*, 687 F.3d

18  1266, 1273-74 (Fed. Cir. 2012); *see also Ass'n for Molecular Pathology v. USPTO*, 702 F. Supp.

19  2d 181, 214 (S.D.N.Y. 2010), *aff'd, Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133

20  S. Ct. 2107 (2013 )("disputed terms… must be construed [to] ensure [claim scope] is accurately

21  assessed" before judging patent eligibility).  Courts routinely deny similar motions as premature.[3]

22         NPAW contends that the '725 patent claims "are directed to the age-old abstract idea of

23  status reporting," but makes no effort to construe any terms of its claims.  Of course when

24  properly construed, the '725 patent claims are not directed to any type of "status reporting," but

---

[3] *See, e.g., Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, 2016 WL 283478, at *3
(N.D. Cal. Jan. 25, 2016) ("claim construction will aid … determin[ation of] the scope of
preemption and [existence of] inventive concept"); *Timeplay, Inc. v. Audience Entm't LLC*, 2015
WL 9695321, at *8 (C.D. Cal. Nov. 10, 2015)("Defendant has not [shown] that these additional
elements are simply conventional steps … insufficient to supply an "inventive concept."); *Genetic
Techs. Ltd. v. Agilent Techs., Inc.*, 24 F. Supp. 3d 922, 928 (N.D. Cal. 2014) (inventive concept
analysis "requires more factual development and potentially [claim] construction").

1    rather, require obtaining "information relating to the status of the content player on a time driven

2    basis," "summarizing at least a portion of the obtained status information," and "report[ing], via a

3    communications interface, at least a portion of the summarized status information." ('725 pat at

4    claims 1, 12-13).  The specification discusses the terms in detail, confirming that in this technical

5    context, the terms are not susceptible to lay interpretation.  At least the terms "performance data,"

6    "time driven basis," "summarizing," and "content distribution monitoring server" require

7    construction to understand the scope of the claims.  For example, "performance data" is data

8    reflecting the user experience while viewing the video ('725 pat at 3:31-42), "on a time driven

9    basis" refers to adjusting the frequency so as not to degrade performance of the player,

10   "summarizing" includes, for example aggregating data so as to permit less data to be reported

11   ('725 pat at 7:23-8:55), and the "content distribution monitoring server" refers to a server

12   infrastructure separate from and in communication with multiple content sources and content

13   players" ('725 pat, *passim*).  NPAW cannot reasonably argue that these claims, considered as a

14   whole and properly construed, are not patent eligible under Section 101.[4]

15                    **3.      The '288 Patent Claims Are Not Directed to an Abstract Idea**

16          Like the '725 claims, the '288 claims are also not directed at simply "status reporting."

17   NPAW argues that the '725 and '288 patents are "substantially similar and linked to the same

18   abstract idea."  This is not true.  The patents' claims include some similar limitations: both *involve*

19   monitoring and reporting the performance of a media player.  But the similarity ends there.  The

20   heart of the '725 patent's claims is the time-driven collection of performance data and adaptively

21   summarizing it before reporting it to a monitoring server, while the focus of the '288 patent's

22   claims is the separate software module loaded onto the client which is able to externally and non-

23   intrusively monitor the performance of the media player.  These are different patents serving

24   different purposes in different ways.  NPAW's presentation of claim 1 of the '725 patent as

25   somehow representative of the '288 patent, without even attempting to show that "all the claims

26   are 'substantially similar and linked to the same abstract idea'" is an obvious attempt to skirt the

27
     _____

28   [4] Conviva reserves its rights to alter any construction set forth in this Opposition, and offer
     additional terms for construction under the Northern District of California Patent Local Rules.

1   actual limitations of the '288 patent.  *Content Extraction & Transmission LLC v. Wells Fargo*

2   *Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014); *see also Chrimar Sys.*, No. 6:15-cv-163-JDL,

3   slip op. at 12 (reversing § 101 finding because entirety of claim covered "structures [that] provide

4   an Ethernet-specific solution to the conveyance of information in a network").

5                       **4.       The '288 Patent Claims Contain Inventive Concepts**

6           Like the '725 patent, the '288 patent cannot be boiled down to just the "status reporting"

7   idea.  And by doing so, NPAW oversimplifies the claims and blatantly ignores the other specific

8   limitations.  As discussed in detail above at p.2, the'288 claims are directed to specific, concrete

9   implementations of systems for monitoring and reporting the performance of a content player by

10   loading a monitoring module configured to obtain status information about the content player

11   (because the players themselves lacked monitoring capabilities) and making inferences using

12   available data (because useful metrics were often not directly observable) and reporting, via a

13   communication interface, at least a portion of the obtained status information to a monitoring

14   service that is external to the system.  *See* '288 pat at claim 1.  The '288 patent specifically teaches

15   how the monitoring module would be built.  *Id.* at 4:12-5:42.

16           And as with the '725 patent, there is no risk of undue preemption.  The '288 claims include

17   specific limitations that "are not necessary or obvious tools for" status reporting and are more than

18   "just minor variations on" the "steps" of the '725 patent.  Mot. at 6;  *DDR Holdings*, 773 F.3d at

19   1259.  Rather, the '288 claims recite a specific way to monitor performance of a content player.

20   Loading a player-specific monitoring module, and inferring content-distribution-specific metrics

21   based on accessible data will not preempt all applications of "status reporting"—even *within* the

22   particular technical domain of content distribution networks.

23           Finally, as with the '725 patent, NPAW's motion is premature without claim construction

24   to properly understand the scope of the claims.  The '288 claims are not merely directed to any

25   type of "status reporting," but rather, require "load[ing] a monitoring module" to obtain "status

26   information" associated with a content player, including by making "inference[s] using accessible

27   data."  '288 pat at claim 1.  A "monitoring module" includes software instructions separate from

28   the content player itself, and is able to discern status information.  *Id.* at 4:12-5:42.  "Status

---

information" is information that describes the user experience and user behavior.  *Id.* at 3:21-32, 5:43-7:2.  And "making … inferences using accessible data" refers to the system determining a valid value for an item of status information using other data available to the monitoring module.  *Id.* at 8:35-11:25.  Taken as whole and properly construed, NPAW's assertion that the '288 claims are directed at the abstract idea of "status reporting" just seem silly.

### 5.      The '965 Patent Claims Are Not Directed to an Abstract Idea

NPAW argues that the '965 patent claims are directed to the abstract idea of "making predictions based on historical data," and that "[a] human could perform" all of the steps of the '965 patent.  Mot. at 11.  First, NPAW's abstract formulation completely ignores the claim step of directing the client to the appropriate source for the content desired ("providing the client with instructions . . ."), which improves on the prior art.  NPAW's argument can thus be rejected just from the face of the claims.  And even if a human could perform all the steps of the '965 claims - which a human could not in the appropriate context of the patents - courts have cautioned against using "pencil-and-paper analysis" where the claims are directed at activities that humans did not (and could not) "engage in before computers."  *California Inst. of Tech.,* 59 F. Supp. 3d at 995; *see also Iron Gate*, 2016 WL 4146140, *and Network Congestion*, 2016 WL 1129210 (*supra* p. 6).

Unlike the claims in the cases cited by NPAW,[5] the '965 claims do not "simply add[] conventional computer components to well-known business practices," recite "use of an abstract mathematical formula on any general purpose computer," claim "a purely conventional computer implementation of a mathematical formula," or claim "generalized steps to be performed on a computer using conventional computer activity."  *See TLI*, 823 F.3d at 612 (quoting *Enfish*, 822 F.3d at 1338).  Rather, like the claims of the '288 and '725 patents, the '965 claims are directed to improving the functionality of a Content Distribution System, which is a particular type of computer system—a system of multiple servers streaming video to multiple clients over a

---

[5] *See, e.g.*, *Content Extraction*, 776 F.3d at 1347 (collecting and storing data); *Cybersource Corp., v. Retail Decisions, Inc.,* 654 F.3d 1366, 1367 (Fed. Cir. 2011) (detecting fraud), *Intellectual Ventures I, LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369-70 (Fed. Cir. 2015) (tailoring presentation of information to a user), *Alice*, 134 S. Ct. at 2356 (intermediated settlement); *TLI,* 823 F.3d at 612 (classifying and storing images), *Ultramercial*, 772 F.3d at 715-16 (displaying content in exchange for advertising).

network.  And claims directed to an improvement to computer functionality are patent-eligible.
*Id.* at 612 (citing *Enfish*, 822 F.3d at 1335); *see also DDR Holdings*, 773 F.3d at 1257 (solving "a problem specifically arising in the realm of computer networks" is inventive).  The '965 claims use metrics, partitions the clients and aggregates the performance in a way only meaningful in the context of Content Distribution Systems, and use the results to improve the performance of the Content Distribution System.  As in *DDR* and *Enfish*, this is a patent-eligible improvement—a novel technological solution to a problem arising only in the field of streaming video.  The '965 claims are not simply directed at "making predictions based on historical data."

### 6.    The '965 Patent Claims Contain Inventive Concepts

Even if the '965 claims *were* directed at the abstract idea of "making predictions based on historical data," the claims are limited to specific, non-preemptive ways of applying the idea to make improvements in the new technological field of streaming video in a content distribution network.  The claims, properly construed, recite novel and improved ways of controlling content players (clients) by partitioning and aggregating the clients and data so as to improve system performance—a "particular, practical application" of the concept.  *See, e.g., Bascom Global*, 2016 WL 3514158, at *8 (a "particular, practical application" of the "abstract idea of filtering content" was patent-eligible).  As just one example of an inventive concept, the '965 patent addresses the problem of poor "startup" (*see, e.g.*, '225 prov. at 3) by directing the player to the best source and bitrate before playback begins.  '965 pat at 3:4-6, 4:9-33.  And as with the '725 and '288 patents, to the extent NPAW challenges the inventive concepts presented in the specification, claim construction would be necessary to understand the full scope and limitations of the claims.

Finally, NPAW does not even argue that the '965 patent would preempt all use of an abstact idea.  Regardless, the limitations of partitioning and aggregating, and the type of streaming instructions provided (source and bitrate) place meaningful limits on the scope of the claims, making them a "specific, discrete implementation" that does not preempt all use even of the patent's true "idea"—improving the performance of a content distribution network.

### B.    NPAW's Motion is Deficient Because It Fails to Address Each Claim

NPAW's motion should also be denied because it provides no evidence or analysis as to

1    why claim 1 of the '725 patent is representative of all 41 claims of the '725 and '288 patents, and

2    claim 1 is representative of all 21 claims in the '965 patent.[6]  When determining patent eligibility,

3    each claim "must be considered as a whole," not just a couple of the claims, and not just portions

4    of the claims.  *See, Diamond,* 450 U.S. at 188; *see also Digitech Image Techs. v. Elecs. For*

5    *Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014); *Fr. Telecom S.A. v. Marvell Semiconductor*

6    *Inc.,* 39 F.Supp. 3d 1080, 1097 (N.D. Cal. 2014) ("Supreme Court precedents urge a flexible

7    claim-by-claim approach… that avoids rigid line drawing.").  NPAW's failure to address all

8    elements of all claims is fatal.

9    **C.    Defendants' Preemption[7] Arguments Are Premature And Meritless**

10           Conviva's claims for intentional interference with contractual relations and unfair

11   competition are not preempted by its trade secret misappropriation claims.  As set forth more fully

12   in Conviva's concurrently-filed Opposition to Defendants Gutierrez and Verges' motion to

13   dismiss, CUTSA "does not displace noncontract claims that, although related to a trade secret

14   misappropriation, are independent and based on [distinct] facts."[8] *Angelica Textile Servs., Inc. v.*

15   *Jaye Park*, 220 Cal. App. 4th 495, 506 (2013)(citations omitted); *see also id.* at 506 (explaining

16   that *Silvaco Data Systems v. Intel Corp*. 184 Cal. App. 4th 210, 216, 242 (2010) found unfair

17   competition claim based on defendant's role in third party violation of injunction against transfer

18   of software not preempted); *Rovince*, 2013 WL 5539430 at *5 (interference claim not preempted).

19           Defendants ignore Conviva's definition of "Proprietary Information" as including non-

20   trade secret information.[9] D.I. 11, ¶¶ 29-30; *cf. What 4 LLC v. Roman & Williams, Inc*., 2012 WL

21   1815629 at *4 (N.D. Cal. May 17, 2012) (plaintiff failed to allege that any information did "not

22

---

23   [6] Under 35 U.S.C. § 282, each patent claim "shall be [independently] presumed valid."
     [7] Courts use the term "preempt" interchangeably with "supercession" or "displacement."
24   [8] *Rovince Int'l Corp. v. Preston* found *K.C. Multimedia* distinguishable because the defendants
     allegedly encouraged a party to a contract to misappropriate trade secrets, so prevailing on
25   interference required proving that "trade secrets were in fact misappropriated." 2013 WL
     55394302013, at *5 (C.D. Cal. Oct. 7, 2013)(*distinguishing K.C. Multimedia, Inc. v. Bank of Am.*
26   *Tech. & Operations, Inc.*, 90 Cal. Rptr. 3d 247, 257-61 (2009)).  Conviva need not prove trade
     secret misappropriation to prevail on other claims, so *K.C. Multimedia* is inapplicable.
27   [9] Proprietary Information is defined in the MNDA as the "Disclosing Party's business (including,
     without limitation, computer programs, technical drawings, algorithms, know-how, formulas,
28   processes, ideas, inventions (whether patentable or not), schematics, and other technical, business,
     customer and product development plans, forecasts, strategies and information)…" D.I. 11, ¶ 29.

---

1   rise to the level of a trade secret."). "Defendants [also] ignore the Court's obligation… to construe

2   the allegations in a light most favorable to Plaintiff." *Kovesdy v. Kovesdy*, 2010 WL 3619826 at *3

3   (N.D. Cal. Sept. 13, 2010). Conviva's tort claims are not based on trade secret misappropriation.

4   Conviva alleges that NPAW induced Wauki.tv to breach its agreements and terminate its customer

5   status, and developed an unfairly competing business. D.I. 11, ¶¶ 23-49, 106-114. Liability

6   would not depend on any particular information being a trade secret. "[T]o the extent that the

7   trade secrets claim" is not based on "misappropriation of all [Conviva] Proprietary Information,

8   the [tort allegations] are not based on the same operative of nucleus facts," so are not preempted.

9   *Phoenix Techs. Ltd. v. DeviceVM*, 2009 WL 4723400 at fn. 1 (N.D. Cal. Dec. 8, 2009).

10         Contrary to Defendants' argument (Mot. at 14), the "gravamen" of Conviva's trade secret

11   and tort claims is not "the same," as discussed above. Thus, Defendants' reliance on *Gabriel*

12   *Technologies* is misplaced,[10] and in any event that case is not proper authority because it relied on

13   a case designated "NOT FOR CITATION." *See Gabriel Techs. Corp. v. Qualcomm Inc.*, 2009

14   WL 3326631 at *11 (S.D. Cal. Sept. 3, 2009)(*citing AirDefense*, *Inc. v. Airtight Networks, Inc.*,

15   2006 WL 2092053, *3 (N.D. Cal. July 26, 2006)); *see also Phoenix*, 2009 WL 4723400 at *5 n. 1

16   (*AirDefense* "cannot be considered," per Civ. L.R. 3-4(e)).

17         Defendants' motion should be denied. Alternatively, any issues are more properly

18   addressed on summary judgment.[11] *See U.S. Legal Support, Inc. v. Hofioni*, 2013 WL 6844756 at

19   *11 (E.D. Cal. Dec. 20, 2013)*; Amron Intern. Diving Supply, Inc. v. Hydrolinx Diving Commc'n,*

20   *Inc.*, 2011 WL 5025178 at *10 (S.D. Cal. Dec. 20, 2013).

21   **D.   Conviva Has Sufficiently Pleaded Trade Secret Misappropriation**

22         The only element of trade secret misappropriation Defendants challenge is the existence of

23   a trade secret. But "trade secrets need not be [publicly] disclosed in detail in a complaint."

24   *Autodesk, Inc. v. ZWCAD Software Co.*, 2015 WL 2265479, at *6 (N.D. Cal. May 13, 2015).

25   ─────────────────────

26   [10] Most of NPAW's cases involve conduct by former employees/contractors. *See Farmers Ins.*
     *Exch. v. Steele Ins. Agency*, 2013 WL 3872950 at *1-3 (E.D. Cal. July 25, 2013); *Axis Imex, Inc. v.*
     *Sunset Bay Rattan, Inc.*, 2009 WL 55178, at *1 (N.D. Cal. Jan. 7, 2009); *K.C. Multimedia, Inc.*,
27   171 Cal. App. 4th at 945; *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F.Supp. 2d 911, 984 (C.D. Cal.
     2011). Conviva's claims do not implicate policy concerns about chilling employee mobility.
28   [11] The *Mattel* case relied upon by Defendants adjudicated preemption on summary judgment. *See*
     *Mattel*, 782 F. Supp. 2d at 940, 985.

1   Conviva's allegations are sufficient.  *Compare, e.g.*, *id.* at *5 (complaint sufficiently alleged

2   source code as a trade secret, including portions "that underlie the commands, interfaces and

3   program files associated with the dozens of specific features") *with* D.I. 11, *e.g.* ¶¶ 29, 30, 34-49.

4       Defendants contend, citing *Synopsys*, that particularity is required at the pleading stage.

5   But *Synopsys* invokes *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253 (Cal. Ct. App. 1968).

6   *Synopsys, Inc. v. ATopTech, Inc.*, 2013 WL 5770542, at *5 (N.D. Cal. Oct. 24, 2013).  *Diodes* no

7   longer controls; it was codified in a state rule of civil procedure, and as codified its "particularity"

8   requirement applies at most to discovery, not pleading.[12]  *See Brescia v. Angelin*, 172 Cal.App.4th

9   133, 144 (2009)(§ 2019.210 codified *Diodes*); *Resonance Tech., Inc. v. Koninklijke Philips Elecs.,

10  N.V.*, 2008 WL 4330288, at *4 (C.D. Cal Sept. 17, 2008)("unambiguous language" of § 2019.210

11  indicates it "relate[s] to discovery, not pleading").[13]  Even when § 2019.210 applies, a plaintiff

12  need not "define every minute detail of its trade secret." *See Prolifiq*, 2014 WL 2527148 at *2-3.

13      Defendants' other cases are unavailing.  In *Jobscience,* the Court *granted* the plaintiff's

14  motion to add a trade secret claim, but exercised discretion to order an under seal submission

15  summarizing the trade secrets.  *Jobscience, Inc. v. CVPartners, Inc*., 2014 WL 852477 at *5 (N.D.

16  Cal. Feb. 28, 2014).  In *MedioStream*, the issue was whether the plaintiff identified which trade

17  secrets were misappropriated by which defendants, to put them on notice.  *MedioStream, Inc. v.

18  Microsoft Corp.*, 869 F. Supp. 2d 1095, 1113 (N.D. Cal. 2012).  Here, all defendants allegedly

19  misappropriated the trade secrets (D.I. 11, ¶¶ 115-122), so notice concerns are inapplicable.[14]

20      Defendants' motion should be denied, but if the Court is inclined to grant the motion,

21  Conviva requests leave to amend.  *See, e.g., MedioStream*, 869 F. Supp. 2d at 1117.[15]

---

22  [12] It not clear if Cal. Code of Civ. Proc. § 2019.210 applies in federal court.  *See Prolifiq Software

23  Inc. v. Veeva Sys. Inc*., 2014 WL 2527148 at *1 fn. 2 (N.D. Cal. June 4, 2014).
    [13] *Synopsys* was decided after review of manuals under seal.  *Synopsys*, 2013 WL 5770542 at *6.

24  [14] The types of documents identified in *S. Cal. Inst. of Law v. TCS Educ. Sys.*, 2011 WL 1296602
    (C.D. Cal. April 5, 2011) were more generally described than those identified here.  *Compare id.*

25  at *7 (identifying, *e.g.*, "by-laws, corporate tax returns, [meeting] minutes," and "policy manuals")
    with D.I. 11, ¶ 42 ("Conviva SDK JS Doc FINAL[1]," etc.).

26  [15] Moreover, Conviva may seek leave to amend to add a conversion claim based on tangible
    property.  *See, e.g.*, D.I. 11, ¶ 42 (listing specific documents); *see also Angelica*, 220 Cal. App. 4th

27  at 508 ("even if the documents… contained no trade secrets, they were still tangible property and
    therefore the proper subject of a conversion claim" that was not preempted).  Conviva may also

28  seek to add a constructive fraud claim. *See Jobscience,* 2014 WL 852477 at *3 (granting motion to
    amend complaint to add claims for constructive fraud).

---

Dated:  August 8, 2016

Respectfully submitted,

By: /s/ Shane Brun
Shane Brun
*sbrun@goodwinlaw.com*
Rachel M. Walsh
*rwalsh@goodwinlaw.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center, 24th Floor
San Francisco, California 94111
Tel.:   415.733.6000
Fax.:  415.677.9041

Lana S. Shiferman
*lshiferman@goodwinlaw.com*
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, Massachusetts 02210
Tel.:   617.570.1000
Fax.:  617.523.1231

Attorneys for Plaintiff
CONVIVA INC.

1

## **CERTIFICATE OF SERVICE**

2          I, Shane Brun, hereby certify that a true and correct copy of the above and foregoing

3   document, filed through the CM/ECF system, will be sent electronically to the registered

4   participants as identified on the Notice of Electronic Filing (NEF) and paper copies shall be served

5   by first class mail postage prepaid on all counsel who are not served through the CM/ECF system

6   of August 8, 2016.

7

8                                        /s/ Shane Brun
                                         Shane Brun
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28